First case this morning is Tate and Lyle v. Craig. That's case number 416-0886 for the appellant Carl Draper and Robert Hockman. And Mr. Draper will not be arguing according to my notes. Is that correct? And Mr. Stotz? Right, thank you. For the appellee Michael Keithart and William Trimble both not arguing and Gino DeVito, correct? All right, you may proceed. Thank you, your honors. Good morning. Rob Hockman for James Craig. This court should vacate the preliminary injunction because affirming it would radically change the law and transform the inevitable disclosure doctrine into a mere fear of potential disclosure doctrine. That's not what the law is and that's not what the law should be. I'm going to focus the bulk of my time on inevitable disclosure this morning because Tate and Lyle presented no other evidence that it would be irreparably harmed by Mr. Craig joining ADM in industrial starch. As the circuit court stated, quote, this is a case about inevitable disclosure. Inevitable disclosure is an essential component of the ruling. And if Tate and Lyle and the circuit court fail to explain how the legal standard of inevitable disclosure has been met, the preliminary injunction must go. So generally speaking, we know from the cases that the inevitable disclosure doctrine is rigorous. And in this way it corresponds to the irreparable injury requirement of preliminary injunctions in general. They're not supposed to be routinely granted. It's not supposed to be a matter of course that cases involve inevitable disclosure. And the cases like Triumph Packaging and Teradyne say specifically the mere fear of disclosure is insufficient to satisfy the inevitable disclosure doctrine. There must be a, quote, high probability, high probability of disclosure. In other words, inevitable if not quite taken literally is still taken seriously in the inevitable disclosure doctrine. So now we turn to the circuit court ruling. And there's just no finding. There's just no finding that disclosure here is inevitable or even highly probable. What are the factors that should be considered?  The courts have looked at things like the similarity of the jobs, the extent to which the new employer takes steps to prevent disclosure, and the level of competition. Just comment on those two. So, well, here's what we know. We know that the roles are somewhat similar, that he's moving over into a similar field. So we knock that one out. That favors the other side. We know that we do know very, very clearly and undisputedly that the steps that ADM took to prevent disclosure here are unquestionably appropriate. ADM, Tate and Lyle's own counsel at the start of the hearing began the hearing more or less by saying ADM has done nothing wrong. Everybody agrees, in fact, that ADM has rigorous policies and procedures in place, that they rigorously communicated, vigorously communicated those to Mr. Craig when he joined, that upon hearing even just a concern out of Tate and Lyle, even just a concern out of Tate and Lyle, they took the extra steps to make sure that no Tate and Lyle information came into ADM. They don't want it. And we know even more than that because we know here not only did ADM take all the proper steps and do everything it's supposed to do, but we know that ADM didn't hire Mr. Craig because of his experience at Tate and Lyle. The testimony, again, undisputed, is that Mr. Craig went to school and studied for this field of industrial starch. He worked for years at various customers of ADM. And that's what attracted ADM's attention to Mr. Craig when they were looking to bring on somebody in this position that they were looking to fill. So not only is disclosure not required here, not only can Craig do his job at ADM without using Tate and Lyle's information, he wasn't even hired because he had access to it. There's no suggestion that ADM has any interest or that this job in any way requires the use of Tate and Lyle confidential information. Now, that's, I think, important because when we go through the cases, when we actually look at the cases that have, I think, properly found inevitable disclosure and support injunctions, you see dramatic differences between those cases and this case. And again, what you have, all you have from the circuit board here is a finding, quote, there is a risk of inevitable disclosure, a risk of inevitable disclosure. That sounds to me, that sounds to us very much like the mere fear of disclosure. It's possible. There's a risk. It's possible. Tate and Lyle fears it. And I'm not here to tell you Tate and Lyle was unreasonable to call attention to ADM. But you have to look at more than just Tate and Lyle's fear of inevitable disclosure, of disclosure. You have to ask more. And what we see in cases like PepsiCo, Your Honor, Seventh Circuit decision, is a situation where the employee has extensive and intimate knowledge in his head. That's a case involving pricing architecture and distribution systems for sports drinks. And that kind of information in his head, in his new job, he could not help, the court said, could not help but refer to that. That's directly opposite, directly opposed to the testimony in this case, again, undisputed. How does that balance, though, with the, as a trial judge, the thought that there's the apparent intent to take information with him, based on the testimony regarding the thumb drive and, you know, the place and so forth? Agreed, Justice Connick. I think there's facts to balance here. But the balance is ultimately pointing at the question, what's the likelihood? Is there a high likelihood? Well, does the likelihood increase if the employee that's the subject that we're looking at has shown a rather urgent need to acquire information that would be, would be traceable? So there was a lot of, there was a lot of dispute in the testimony about whether Mr. Craig actually took this information. The three documents that are at issue in this case, the tech services project, the SER, and the tape pointer, those are the three points, those are the three documents that the circuit court said were the trade secrets at issue in this case. Mr. Craig maintains, and it's a preliminary injunction, and there's been only a preliminary speculation about the outcome of this. Mr. Craig has maintained that he did not take those items with him when he left AVM. He had them. He doesn't deny that he had them in his possession when he was at Tate & Lyle, but he didn't take them to AVM. Now, obviously, the circuit court thought that there was a sufficient possibility that Tate & Lyle will be able to prove at trial that he did take that. And so they got past the first step, the making a mere showing, some kind of a fair showing of a likelihood of success on the merits. But the standard of a fair showing of a likelihood of success on the merits is pretty low. That's just a gatekeeper to say, look, if your case isn't doomed to fail, your case is doomed to fail, you don't get a preliminary injunction. But that standard about fair showing doesn't apply to irreparable injury. That requires more. And so I think it matters, Your Honor, but what you see in the cases, cases like RKI and Liebert, what you see in the cases is not just evidence that somebody took something, not just evidence that somebody has access to something, because, after all, in the industrial space, people have familiarity with sensitive information all the time. If they're going to leave, they're going to have some, it's very common that they'll have some information in their head that they can't help, but they can't just forget. So you need something more, and in the RKI... Well, he's not talking about what's in his head. That's right, but that's an important fact. So unless he has the documents still and is willing to act contrary to his new employer's policies and risk, discipline, and engage in rank insubordination at ADM, that's what he has to do. He has to bring the documents, have the documents, look at them, refer to them in connection with his work at ADM. That's what he has to do. As a trial judge, am I entitled to take into account the evidence of his activities just before he left? And am I, would I be, in terms of the timing, he knows he's going to ADM at the time this behavior is occurring. Yes. One would hope that he knows the reason that they're hiring him. Yep. One would hope that he would know they're going to be maybe tough on making sure there's no lawsuit about it, i.e., they're going to put up safeguards. And yet he engages in behavior that is suspicious to his fellow employees and might cause the judge to say, when this guy says he didn't take it and he doesn't have it and he's not going to refer to it, that's a credibility issue. And if it's a credibility issue that he finds against the employee, then whether he uses the words or not, he's thinking about inevitable disquality. Respectfully, I think, Your Honor, that the evidence here is pretty weak on Mr. Craig's sort of consciousness of wrongdoings. As I mentioned, Mr. Craig has his own story. I recognize that. And Mr. Craig has explained that. But your suggestion that it's weak is your evaluation of the evidence, which the trial judge is entitled to. Not exactly, Your Honor. Okay. It's based on prior cases like RKI and Lieber where you have these situations where you have digital, in those cases you have digital download of sensitive information like customer information and the like. And the cases talk about evidence of covering his tracks, of evidence of people going out of their way. And in the RKI case, mind you, the employer too participated, the new employer participated in the evidence to cover tracks. So there's a kind of extra activity that says not only did you take information, because there are cases, Your Honor, like Triumph Packaging where information was taken, was known, and a preliminary injunction was denied because there's no inevitable disclosure. That can happen. And this is exactly the kind of case where it's appropriate for that to happen, where it's necessary. Because you don't have a strong indication. You don't have the kind of strength of intentional, conscious wrongdoing. You have a dispute in the evidence. I recognize, Your Honor, that the judge said he did not find Mr. Craig's testimony credible, but that was on a specific issue because Mr. Craig had testified that for his entire time at Tate & Lyle, he had been using thumb drives to back up his computer all along, and that he thought, his view was that his supervisor knew that. And his supervisor said, no, I didn't know that. And the judge's finding, if you look back at the ruling, you'll see the judge's finding about lack of credibility on Craig was he simply, the judge simply agreed that Ms. Hostetler-Schrock, his supervisor, was testifying credibly, that she didn't know. And so that there wasn't any kind of suggestion that Tate & Lyle was comfortable with Mr. Craig taking information out of Tate & Lyle and bringing it home to work on it at home and the like and backing it up on the thumb drives. So that failed. But that's a far cry from saying the trial judge is absolutely certain that Mr. Craig was behaving suspiciously with a consciousness of wrongdoing. He doesn't have to be positive about it. That's right. But if it's only a fair showing, if it's only a fair showing.